UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| R. DENNIS KENNEDY, ANGELES VALENCIANO, PETER JASON DEGROOT, and JASON LEE, *Plaintiffs*, | § § § § § | CIVIL ACTION NO. 4:24-CV-02139 |
| V. | § § | |
| UNITED STATES LIABILITY INSURANCE COMPANY, *Defendant*. | § § § § | |

**PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF 8]**

Plaintiffs R. Dennis Kennedy ("Kennedy"), Angeles Valenciano ("Valenciano"), Peter Jason DeGroot ("DeGroot"), and Jason Lee ("Lee") (collectively, the "Plaintiffs" or the "Individual Insureds") file this Response to Defendant United States Liability Insurance Company's (the "Defendant," "USLIC" or "Insurer") Motion for Summary Judgment [ECF 8], and would show that they are entitled to coverage on their claim under the subject policy.

**Summary of the Requested Relief**

1.      As argued in Plaintiff's Motion for Summary Judgment [ECF 9], and which is fully incorporated herein, Insurer's refusal to provide coverage has left the Individual Insureds in the position of having to fund their own defense, causing substantial damage and hardship.

1

2.      Individual Insureds filed suit seeking promised insurance policy benefits, namely reimbursement of and payment for the loss and defense costs resulting from the claims made in Federal Case 4:23-CV-1162 (the "Underlying Lawsuit") under the Non-Profit Management Liability Policy Numbered NDO1583534B ("Policy"). See ECF 8-2; a true and correct copy of the Policy.

3.      On September 30, 2024, the Insurer filed a motion for summary judgment arguing and seeking judgment that the Individual Insureds are not entitled to coverage. See ECF 8. As the basis for denial, USLIC cites two different Exclusions to coverage, neither of which apply. Insurer further argues that, despite the express language of the policy identifying them as Insureds, they are "third-parties" and no duty is owed to them.

4.      On October 1, 2024, Plaintiffs in turn filed their own motion, seeking coverage. See ECF 9.

5.      As shown below, the Insurer failed to meet its burden on summary judgment. Moreover, for all the reasons Insurer's motion should be denied, Plaintiffs' in turn should be granted. The Court is therefore asked to deny the Insurer's Motion for Summary Judgment [ECF 8] and grant the Individual Insureds' Motion [ECF 9].

### Summary Judgment Evidence

Exhibit 1, Plaintiff's Second Amended Complaint (ECF 8-1) (ECF 9-1);
Exhibit 2, the Policy (ECF 8-2) (ECF 9-2);
Exhibit 3, Notice of Claim (ECF 8-3) (ECF 9-3);
Exhibit 4, the Coverage Opinion (ECF 8-4) (ECF 9-4);

Exhibit 5, DeGroot and Valenciano's Amended Answer to Plaintiffs' Second Amended Complaint (Case 4:23-cv-01162, ECF 80) (ECF 9-5); and
Exhibit 6, Kennedy and Lee's Amended Answer to Plaintiff's Second Amended Complaint (Case 4:23-cv-01162, ECF 81) (ECF 9-6).

## The Background Facts[1]

### A.    The Policy.

6.      The Policy provides under Part A that the Insurer will pay, on behalf of an "Individual Insured" for loss and defense costs resulting from a "Claim" made against the "Individual Insured" during the Policy period, to the extent the "Individual Insured" is not indemnified by the "Organization."  See Exhibit 2 (ECF 8-2), at pg. 6 of 57.

7.      "Claim" is defined as any written demand for monetary damages or non-monetary relief, or any civil proceeding commenced by service of a complaint—which is received by or brought initiated against any "Insured" alleging a "Wrongful Act." See Exhibit 2 (ECF 8-2) at pg. 7 of 57.

8.      The "Insured" is the NDC, which also is the "Organization." See Exhibit 2 (ECF 8-2) at pg. 1 of 57.

9.      "Wrongful Act" is defined as any "actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duties"—which is committed or allegedly committed by "the Organization", or "any Individual Insured

---

[1] These same facts are set forth at, and this is a restatement of, paragraphs 4-24 of Plaintiffs' Motion for Summary Judgment [ECF 9].

arising solely from duties conducted on behalf of the Organization or asserted against an Individual Insured because of any actual or alleged act, error…." See Exhibit 2 (ECF 8-2) at pg. 11 of 57.

**B.    The Background Facts.**

10.    United States Liability Insurance Company ("USLIC" or the "Insurer") issued the Policy and is the "Insurer." See USLIC's Motion at ECF 8, pg. 2; Exhibit 2 (ECF 8-2).

11.    The National Diversity Council ("NDC") is identified in the Policy as the "Insured" and "Organization. See Exhibit 2 (ECF 8-2) at pgs. 1 and 3.

12.    Until they were constructively discharged from the NDC in January and February of 2023, the Individual Insureds were executive officers, employees, and/or independent contractors of the NDC, the Named Insured Organization in the Policy issued by the Insurer. See USLIC's Motion at ECF 8, pgs. 1, 3; Exhibit 1 hereto (ECF 8-1). At all material times, Kennedy, Valenciano, and DeGroot were "Executives" and "Employees" of the NDC. See USLIC's Motion at ECF 8, pgs. 1, 3; Exhibit 2 (ECF 8-2) at pg. 8 of 57.

13.    Lee was at all material times engaged by the NDC as an independent contractor to provide assistance with information technology, including maintenance of the website and administration of the server. See USLIC's Motion at ECF 8, pg. 1.  As such, Lee is an an "Employee" as defined in the Policy. See Exhibit 2 (ECF 8-

2) at pg. 8 of 57.

14.    USLIC, in its competing motion for summary judgment (ECF No. 8), repeats the allegations made by the NDC against its former executives and employees. (ECF 8, pgs. 2-4) (the "Competing Motion"). Again, these are *allegations* made by the NDC in the Underlying Lawsuit and then parroted by USLIC in this Lawsuit. See Exhibit 1 (ECF 8-1). None of these allegations are established or admitted facts.

15.    Kennedy, Valenciano, and DeGroot allege that at all material times, they worked for the NDC without receiving compensation, but always with the express understanding that deferred compensation would be paid once vested. See Exhibits 5 and 6. Kennedy, Valenciano, and DeGroot allege that the NDC Board knew and approved of this back pay obligation (the "Back Pay"), which such obligation was reflected in its public filings as well as the NDC Board of Directors' (the "NDC Board") approved annual budgets—this is all a matter of public record. See Exhibits 5 and 6. Kennedy, Valenciano, and DeGroot also allege that the NDC accepted the benefits of their work with the knowledge that they each were relying on the NDC's specific representations that they would eventually be compensated at the agreed amounts. See Exhibits 5 and 6.

16.    Over time, interest grew in the NDC and its goals as many corporations turned their focus to promoting diversity and inclusion in the workplace. See Exhibits

5 and 6. It was then that the NDC was finally able to pay a salary to Kennedy, Valenciano, and DeGroot and the Back Pay vested. See Exhibits 5 and 6.

17.    In late 2022, the NDC Board retroactively looked back at and questioned the Back Pay. See Exhibits 5 and 6. In early 2023, the NDC Board informed Kennedy that his position would no longer be paid as of January 31, 2023, and threatened to reduce Valenciano and DeGroot's salaries. See Exhibits 1 (ECF 8-1), 5, and 6. Without any basis in law, the NDC Board then demanded that the Executive Plaintiffs return the Back Pay which was vested and already paid (according to the NDC, the return was necessary so that it could "complete [its] ongoing forensic accounting project") and, again without any basis in law, the NDC Board then refused to make payment of the remaining Back Pay earned and vested. See Exhibits 5 and 6. During this same period of time, the NDC's Board began to assert ownership of domains, websites and other intellectual property registered, owned and/or controlled by Kennedy, culminating in an entirely separate dispute involving Kennedy and Lee. See Exhibits 1 (ECF 8-1), 5, and 6.

18.    The NDC Board suspended Lee's services on January 26, 2023, and Kennedy, Valenciano, and DeGroot were constructively discharged from the NDC shortly thereafter. See USLIC's Motion at ECF 8, pg. 3-4; Exhibit 1 (ECF 8-1)Exhibits 1, 5, and 6.

19.    On February 16, 2023, Kennedy filed suit in the Harris County District

Court in Cause Number 202310425 (the "State Court Back Pay Lawsuit") against the NDC alleging claims relating to the Back Pay as well as other claims relating to ownership of the email accounts, websites, and prospective and existing contracts and business relationships (the "Other Claims"). DeGroot and Valenciano later intervened in the State Court Back Pay Lawsuit, asserting similar Back Pay claims.

20.    The NDC Board then filed suit against the Individual Insureds and other entities (the "Underlying Lawsuit Defendants") in the Underlying Lawsuit. See USLIC's Motion at ECF 8, pg. 1; Exhibit 1 (ECF 8-1). The Court is asked to take judicial notice of Case 4:23-CV-1162, the Underlying Lawsuit. For reasons immaterial to this action, the State Court Back Pay Lawsuit was dismissed and then refiled in the Underlying Lawsuit as a counterclaim. See Exhibits 5 and 6.

21.    Again, USLIC and the NDC allege that the Underlying Lawsuit Defendants held elevated leadership roles within the NDC or were affiliated with one more of the Individual Insureds in their respective capacities as an executive or was an employee or independent contractor of the NDC. See USLIC's Motion at ECF 8, pgs. 1 and 3; Exhibit 1 (ECF 8-1). More specifically, the NDC alleges that the Underlying Lawsuit Defendants engaged in a concerted effort to breach certain non-disclosure agreements and fiduciary duties in order to engage in a scheme to divert to themselves funds and other property allegedly belonging to the NDC. See USLIC's Motion at ECF 8, pgs. 1 and 3; Exhibit 1 (ECF 8-1). As alleged, the Individual

Insureds, acting in concert for the advancement of a collective goal, facilitated the diversion of the NDC's funds through the unauthorized use of a computer system protected under the Computer Fraud and Abuse Act ("CFAA"), and also with that same computer system, caused the stoppage of invoices to which members of NDC were entitled pursuant to contracts with the NDC. See USLIC's Motion at ECF 8, pgs. 1, 3; Exhibit 1 (ECF 8-1). The NDC also seems to allege that the Individual Insureds engaged in a concerted effort to undermine or otherwise disenfranchise potential business relationships of the NDC. See USLIC's Motion at ECF 8, pg. 1, 3; Exhibit 1 (ECF 8-1).

22.    While the causes of action appear unrelated to each other, the factual allegations against the Individual Defendants have a clear origin which supports each of the NDC's causes of action.

23.    On information and belief, the NDC provided USLIC notice of the State Court Back Pay Lawsuit, and USLIC tendered the NDC a defense under the Policy.

24.    In turn, the Individual Insureds each provided USLIC notice of the Underlying Lawsuit under the Policy. See USLIC's Motion at ECF 8, pg. 4; Exhibit 1 (ECF 8-1); Exhibit 3 (ECF 8-3). While defending the NDC, USLIC has refused to cover or defend the Individual Insureds. See USLIC's Motion at ECF 8, pg. 4; Exhibit 1 (ECF 8-1); Exhibit 4 (ECF 8-4).

25.    As basis for its rejection, USLIC cites the following exceptions to

coverage: (a) the Conduct Exclusion, (b) the Absolute Professional Liability Exclusion, and (c) the Insured v. Insured Exclusion. Exhibit 4 (ECF 8-4). Based on USLIC's Competing Motion (ECF 8), it is now only relying on the Conduct Exclusion and Insured v. Insured Exclusion. As such, only those exclusions are the subject of this Motion.

26.    As shown above, the Individual Insureds deny each and every one of the NDC's allegations made in the Underlying Lawsuit. See Exhibits 5 and 6. And because the Individual Insureds established coverage, and USLIC cannot establish any exception to that coverage, summary judgment in favor of the Individual Insureds that they are entitled to the benefits of the Policy.

## ARGUMENT AND AUTHORITIES

### A.    The Dispute.[2]

27.    The burden of demonstrating the applicability of an exclusion is on the carrier, and in this instance, USLIC. *Comsys Info. Servs. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 193 (Tex. App. – Houston [14th Dist.] 2003, pet. denied). Thus, once the Individual Insureds establish the existence of a covered claim the burden shifts to USLIC to establish as matter of law that a strict construction of a Policy exclusion negates coverage. USLIC failed to meet this burden in its Competing Motion (ECF 8) and cannot meet its burden in response to this Motion.

---

[2] Paragraphs 27-29 are a restatement of paragraphs 25-27 of Plaintiffs' Motion for Summary Judgment [ECF 9].

**B.    The Applicable Law.**

28.    Texas law governs the Policy and this dispute.

29.    The Policy was issued in Texas, it was issued to Texas Insureds, and the Policy is written to cover risk occurring within the State of Texas. See Exhibit 2 (ECF 8-2). While USLIC is a Pennsylvania insurer, Exhibit 2 (ECF 8-2); USLIC has relied upon Texas law in its Competing Motion and correctly set forth applicable Texas law at pgs. 4-6 of its Competing Motion. See ECF 8.

**C.    Application of the Undisputed Facts to the Policy.[3]**

30.    Individual Insureds incorporate the foregoing paragraphs as if fully set forth herein.

31.    Under Part A of the Policy, the USLIC will pay, on behalf of an "Individual Insured" for loss and defense costs resulting from a "Claim" made first against the "Individual Insured" during the Policy period, to the extent the "Individual Insured" is not indemnified by the "Organization." See Exhibit 2 (ECF 8-2) at pg. 6 of 57.

**(i)    "NDC" is an "Insured" and Each of the Defendants is an Individual Insured.**

32.    The Plaintiff in the Underlying Lawsuit is the NDC, a non-profit organization organized under the laws of the State of Texas and pursuant to Section

---

[3]    Paragraphs 30-47 are a restatement of paragraphs 28-45 of Plaintiffs' Motion for Summary Judgment [ECF 9].

501(c)(3) of the Internal Revenue Code and is the Insured and Organization under the Policy. Again, the NDC is both the Insured and Organization.

33.   There are six defendants in the Underlying Lawsuit, all of whom held elevated leadership roles within the NDC or were affiliated with another defendant in their respective capacity as an executive, as alleged by the NDC. As such, the Individual Insureds each are "Individual Insureds" under the Policy.

34.   It is important to note the distinct definitions for "Insured" and "Individual Insured" under the Policy. That said, the term "Insured" includes the NDC, Kennedy, Valenciano, DeGroot, and Lee.

35.   Importantly, the NDC is not and never has been an Executive or former Executive.

**(ii)   The Underlying Lawsuit is a "Claim."**

36.   The Individual Insureds' "Claim" is entitled to coverage under Policy Part A, including coverage for resulting loss and defense costs arising from the Underlying Lawsuit, if coverage is not excluded.

37.   The NDC asserted 13 separate counts and the Individual Insureds are named in some combination in each. Importantly, the NDC alleges that the origin of

the NDC's claims is based on the same alleged conduct, such that all of the operative

allegations and damages sought against each of the Individual Insureds can be

considered to have the same origin. As such, the Underlying Lawsuit is a Claim, as

defined by the Policy and was filed within the effective period of the Policy.

Moreover, there is no evidence that the NDC is indemnifying the Individual Insureds

for any loss or defense costs for this Claim or that the Underlying Lawsuit was

brought or maintained by any former Executive. To the Contrary, the NDC filed this

suit and is seeking common damages against all of the Underlying Lawsuit

Defendants. See Exhibit 1 (ECF 8-1).

38.   As such, the Individual Insureds are entitled to coverage under Policy

Part A, including coverage for resulting loss and defense costs arising from the

Underlying Lawsuit, if coverage is not excluded.

**D.     The Cited Exceptions to Coverage.**

39.   Section IV contains the applicable exclusions to coverage and the

operative language is, the insurer shall not be liable to make any indemnity or defense

cost payment "in connection with any Claim made against the Insured arising out of,

directly or indirectly resulting from, in consequence of, or in any way involving any

actual or alleged ... [Applicable Exclusionary Language]…. "

### i.    First, the Insured v. Insured Exclusion.

40.    The Insured v. Insured Exclusion is a favorite among carriers and is one

of the most common exclusions cited in D&O claim denials. Essentially the Insured

v. Insured Exclusion prevents double dealing or fraudulent schemes among

executives by excluding coverage for any claim that is brought by one insured against

another insured. *Primo v. Great Am. Ins. Co.,* 455 S.W.3d 714, 733 (Tex. App. 2014),

*rev'd,* 512 S.W.3d 890 (Tex. 2017) (dissenting opinion).

41.    The Insured v. Insured Exclusion states that the Insurer will not pay for

a Claim against any Insured arising from an "actual or alleged Claim brought by or

on behalf of any Insured, provided that this exclusion shall not apply to… " and then

lists off four categories of exceptions. See Exhibit 2 (ECF 8-2) at pg. 13 of 57.

USLIC's Competing Motion is focused on Exception 4, which read all together,

provides:

> The **Company** shall not be liable to make payment for **Loss** or **Defense**
> **Costs** in connection with any **Claim** made against the **Insured** arising

out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged **Claim** brought by or on behalf of any **Insured**; provided that this exclusion shall not apply to: any **Claim** brought and maintained by or on behalf of any former **Executive**, but only if such **Claim** does not arise out of, directly or indirectly result from, is in consequence of, or in any way involves any **Wrongful Act**, responsibilities, actions or failure to act by any **Insured** during the tenure of service of such former **Executive.**

42.    This Claim was neither brought nor maintained by any *former* Executive. The Claim was brought and maintained by the NDC. The NDC is not "any natural persons who are directors, trustees, officers, managing members, advisory board members or committee members or any equivalent position of the **Organization**." See Exhibit 1 (ECF 8-1) at pg. 8 of 57. The NDC is the Organization and Insured.

43.    As noted above, the term "Insured" holds an expanded definition under this Policy. Unlike "Individual Insured," which refers to current or former executives and employees; the term "Insured" refers to both the Organization and Individual Insureds.  Simply, the Claim was brought and maintained *against* former Executives.,

44.    There is no reading of the Individual Insureds Exclusion which applies to the facts and therefore it is not a basis for denying coverage.

**(ii)    Second, the Conduct Exclusion.**

45.    Per the Policy, USLIC will not pay for a Claim against any Insured which alleges any "1. deliberately fraudulent act, omission, criminal act, or willful violation of any statute or regulation by any Insured; or 2. any Insured having gained any profit, remuneration or other advantage to which such Insured was not legally entitled... ." See Exhibit 2 (ECF 8-2) at pg. 12 of 57.

46.    The Conduct Exclusion cannot apply *until a final, non-appealable adjudication* in any underlying proceeding is reached establishing such conduct *or the Insured admits* or stipulates to the excluded conduct. See Exhibit 2 (ECF 8-2) at pg. 12 of 57. None of those contingencies exist.

47.    Therefore, the Conduct Exclusion does not and cannot prevent the trigger of the duty to defend.

**E.    USLIC Owed and Breached the Duty of Good faith and fair dealing.**

48.    At part D of the Insurer's Motion [ECF 8 at pg. 14], Insurer attempts to reclassify the Plaintiffs as "third-parties," and then argues that the only duty owed to the now-reclassified "third-parties" is a duty to settle under the Stowers doctrine. Reclassifying the Individual Insureds as third-parties is nonsensical. This is not a

third-party claim.

49.    Again, at all material times, Kennedy, Valenciano, and DeGroot were "Executives" and "Employees" of the NDC. See USLIC's Motion at ECF 8, pgs. 1, 3; Exhibit 2 (ECF 8-2) at pg. 8 of 57. Lee also wat at all material times an "Employee" as defined in the Policy. See Exhibit 2 (ECF 8-2) at pg. 8 of 57. And therefore, Plaintiffs collectively are "Individual Insureds" and thus "Insureds" under the Policy. This is not a third-party claim, this is a direct claim brought by Individual Insureds as Insureds under the Policy, and as "Insureds" each of the Individual Insureds are entitled to the same duties and benefits as the NDC.

50.    Under Part A of the Policy, the USLIC will pay, on behalf of an "Individual Insured" for loss and defense costs resulting from a "Claim" made first against the "Individual Insured" during the Policy period, to the extent the "Individual Insured" is not indemnified by the "Organization." See Exhibit 2 (ECF 8-2) at pg. 6.

51.    The Insurer owed the duty of good faith and fair dealing and breached that duty.

**F.    USLIC violated chapter 541 and Plaintiffs suffered damages.**

52.    Finally, the Insurer argues that it did not make any misrepresentation about a material fact or policy provision relating to the coverage at issue. Further, the Insurer argues that because it determined there is no coverage, none of the damages incurred by Plaintiffs as a result of that determination are recoverable.

53.    Again, Insurer denied and refused coverage based on two Exclusions which do not apply. There can be no bona fide dispute where the Policy language cited by the Insurer does not apply. In the alternative, to the extent the Individual Insureds are, as argued by the Insurer in its Motion, "third-parties" and not "Insureds" pursuant to the Policy, that is misrepresentation that appears on the face of the Policy and is a misrepresentation upon which the Individual Insureds relied (both as a result of the premium paid, and the claims made) to their detriment. And, as a result of either the Insured's misrepresentations that they are "Insureds" or as a result of the bad faith denial of coverage, the Plaintiffs were forced to incur cost and expense to not only defend the Underlying Lawsuit, but also file this lawsuit to seek coverage.

54.    In conclusion, the denial of coverage was in bad faith. This bad faith denial caused damages to Plaintiffs.

**Conclusion and Prayer**

USLIC's Motion for Summary Judgment should be, in all things, denied.

Pursuant to Part V of the General Terms and Conditions section and Part I of the Directors and Officers Coverage Part of the Policy, the Individual Insureds request a finding of coverage and that USLIC begin advancing payment of all Defense Costs incurred in connection with the proceeding.

Respectfully submitted,

CONKLIN STERNFELS PETTY, PLLC

By: */s/ Melissa Nicholson Sternfels*
     Melissa Nicholson Sternfels
     State Bar No. 24037181
     Federal Id. 38294
     901 Heights Blvd.
     Houston, Texas 77009
     TEL: (832) 713-997-2416
     FAX: (713) 660-1801
     Email: melissa@thecspfirm.com

Counsel for Plaintiffs

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify on the 21st day of October, 2024 that this filing was electronically filed using the Court's electronic filing system and was served on all parties' attorney(s) of record who have made and appearance and have registered as filing users through the system's Notice of Electronic Filing.

*/s/ Melissa Nicholson Sternfels*
Melissa Nicholson Sternfels